**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **Nicole Kennison,** | ) | **CASE NO. 1:06 CV 864** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **Burger King Restaurant, et al.,** | ) | **Memorandum of Opinion and Order** |
| | ) | |
| **Defendant.** | ) | |

**Introduction**

This matter is before the Court upon defendants' Motion for Summary Judgment (Doc.

28).  This case involves an alleged sexually hostile work environment.  For the following

reasons, the motion is DENIED as to all claims except for Count Five.

**Facts**

Plaintiff, Nicole Kennison,[1] filed this lawsuit in the Lake County Court of Common Pleas

against defendants, Burger King Restaurant and Sean Dille.  Defendants have pointed out that

---

[1]     Plaintiff's father, James Kennison, was also originally named as a plaintiff,
        asserting a claim of loss of consortium.  James Kennison has subsequently been
        dismissed by this Court.

Burger King Restaurant is not a legal entity, but is managed by Downtown Restaurant, Inc. (hereafter, DTR) which is identified as the proper defendant herein.  The case was thereafter removed to this Court on the basis of federal question jurisdiction.

Each Burger King Restaurant is staffed with crew members, who cook, perform customer service and clean, and managed by a Store Supervisor.  The latter is assisted by a Store Manager, one or more Assistant Managers and an Opening Associate.  (Linda Bennett depo.)

Plaintiff was hired by Sean Dille, who was an Assistant Manager at the time, in December 2001 as a crew member at the Burger King Restaurant on Heisley Road in Mentor, Ohio.  Plaintiff usually worked from 11:00 a.m. to 5:00 p.m.  (pltf. depo.)  Dille, who had worked for the Burger King Restaurants since 1998, eventually became the Store Supervisor at the Heisley Road restaurant.  (Dille depo.)  Linda Bennet was the District Manager of this restaurant as well as several others.  (Bennet depo.)  At the relevant time, Kristin Rebholz was a Store Manager, and Jessica Morrin and Robert Kugler were Assistant Managers at the Heisley Road restaurant.  (Rebholz depo., Morrin depo. Kugler depo.)

Downtown Restaurant, Inc. maintains a sexual harassment policy contained in its Hourly Team Handbook.  (Rebholz depo. Ex. 1) Plaintiff received and read the policy.  (pltf. depo. 226-227)

At some point, Dille was promoted from Assistant Manager to Store Manager and was transferred from the Heisley Road restaurant to one in Willoughby, Ohio.  Dille then became a Store Supervisor and transferred back to the Heisley Road restaurant.  He worked with plaintiff for about 2 ½ years.  (Dille depo.)  Plaintiff never had a problem with Dille during the approximately one year that he was her Assistant Manager.  Upon his return as Store Supervisor,

however, plaintiff testified that she was sexually harassed by him.  (pltf. depo. 82)

Plaintiff testified that she loved Dille "in a romantic way" from "the first day [she] met him." And, she has "never stopped" feeling that way.  She loved him and he was her "best friend." Plaintiff admits that she was jealous of other female employees who she believed had a "romantic connection" with Dille because plaintiff wanted a "romantic, movie-ness, movie connection" and "love story" with him.  (pltf. depo. 59, 94-95, 125, 228)

Plaintiff testified that over the course of the two years, Dille and an employee named Valerie engaged in daily sexual banter, inappropriate touching and flirting.  This made plaintiff jealous.  Eventually, Dille involved plaintiff in the conversations and directed his comments to her.  After about three weeks of the comments, plaintiff told Linda Bennet that Dille was making sexual comments and that she was getting "sick and tired of it."  Bennett told Dille to stop but plaintiff testified that Bennett did not take it seriously and talked to Dille in a joking manner. (pltf. depo. 67-95) Bennett had never received any previous complaints regarding Dille's behavior toward employees.  (Bennett depo. 25-26)

Plaintiff testified that Dille made inappropriate comments everyday for about an eight month period.  Plaintiff also testified that Dille would get jealous if she talked to other men at the restaurant and he would forcefully drag her away; he switched her hours so that she would only work on the days that he worked; he called her fat and would not permit her to eat while at work, even during double shifts; he slammed her against the wall and threatened to fire her if she did not listen to him; he would tell her things that he would do to her sexually; Dille touched her on the breasts approximately 20 times; he "dry humped" her three times; and he had non-consensual

3

sex in his car on one occasion when he was taking her home after work.[2]  Plaintiff never reported any of this conduct to DTR.  (pltf. depo. 70, 108-126, 132, 155-162, 171-174, )

Plaintiff testified that while sometimes she was offended by Dille's conduct, at other times she did not mind if he touched her.  And, his touching her did not always make her feel uncomfortable.  She testified that "probably" the day after the alleged non-consensual sex, plaintiff told Dille that she loved him.  In fact, plaintiff testified that she loved him at the time of the alleged rape and still loves him today. (pltf. depo. 197, 217, 224, 230)

On March 23, 2005, the day following the non-consensual sex, plaintiff resigned her employment.  She came into work for one hour and then left while yelling out in the dining room, "I'm quitting and I'm not coming back."  (*Id.* 218-219)[3]

A few weeks later, plaintiff wrote a note to Dille explaining that she would not be returning to work because she had just been released from the hospital after being treated for an eating disorder and that she needed to take some time away from work to find Jehovah.  Plaintiff also told Dille "to take care of himself and live life to the fullest and just take care" and that she would miss him.  (*Id.* 245-248)[4] After her resignation, plaintiff telephoned Dille at the restaurant

---

[2]    Defendants assert that while plaintiff claims she worked until 6:00 that night, thereby needing a ride home, her time records indicate that she left at her regularly scheduled time of 4:00.  Defendants, however, fail to submit documentation.

[3]    Plaintiff's brief states that shortly after the assault by Dille and after quitting her employment, plaintiff was hospitalized at Laurelwood.  However, the deposition testimony relied upon is not clear.  In particular, plaintiff testified, "Okay.  I wasn't in Laurelwood.   I was in - - I had stomach problems and they took me to Cleveland Clinic.  So scratch that, I wasn't even in Laurelwood."  (pltf. depo. 220-221)

[4]    Although the Court cannot consider in this summary judgment proceeding evidence which is relevant to plaintiff's credibility, plaintiff's deposition shows a

4

to tell him that she missed him and on one occasion told him that she was sorry that she accused him of raping her.  (*Id.* 255-256)

Plaintiff filed a charge of discrimination with the OCRC and EEOC alleging that she was sexually harassed during her employment by Dille and that in March 2005 Dille forced her to have sex with him in his vehicle.  (pltf. depo. Ex. A)

Plaintiff thereafter filed this Complaint setting forth eleven claims.  Counts One through Three allege sexual harassment and hostile work environment in violation of state and federal law.  Count Four alleges constructive discharge on the basis of sex.  Count Five alleges sex discrimination in violation of state law.  Count Six alleges intentional infliction of emotional distress.  Count Seven alleges negligent hiring and supervision of employees and supervisors.  Count Eight alleges respondeat superior.  Counts Nine and Ten seek punitive and other damages.  Count Eleven was asserted on behalf of James Kennison, who has been dismissed.

This matter is now before the Court upon defendant's Motion for Summary Judgment.

**Standard of Review**

Summary Judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317,

---

troubling history as evidenced by various portions of her testimony: she has engaged in cutting herself since about age 12 and once slit her wrists with a tomato corer while working at Burger King; she was sexually abused by her mother; she was sexually harassed by an employer prior to Burger King; her stepfather engaged in inappropriate sexually-related conduct toward her on two occasions; and she had a bout with anorexia in addition to the bulimia she experienced "ever since [she] started working at Burger King." (pltf. depo. 265-274, 298-305) Incomplete medical records indicate that plaintiff has had "symptoms of schizoaffective disorder since about the age of twelve" and has had "auditory hallucinations."   (pltf. depo. Ex. C)

5

322-23 (1986) (citing Fed. R. Civ. P. 56(c)); *see also LaPointe v. UAW, Local 600*, 8 F.3d 376,

378 (6th Cir. 1993).  The burden of showing the absence of any such genuine issues of material

facts rests with the moving party:

> [A] party seeking summary judgment always bears the initial
> responsibility of informing the district court of the basis for its
> motion, and identifying those portions of "the pleadings,
> depositions, answers to interrogatories, and admissions on file,
> together with affidavits," if any, which it believes demonstrates the
> absence of a genuine issue of material fact.

*Celotex*, 477 U.S. at 323 (citing Fed. R. Civ. P. 56(c)).  A fact is "material only if its resolution

will affect the outcome of the lawsuit."  *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

Once the moving party has satisfied its burden of proof, the burden then shifts to the

nonmoving party.  Federal Rule of Civil Procedure 56(e) provides:

> When a motion for summary judgment is made and supported as
> provided in this rule, an adverse party may not rest upon the mere
> allegations or denials of [his] pleadings, but [his response], by
> affidavits or as otherwise provided in this rule, must set forth
> specific facts showing that there is genuine issue for trial.  If he
> does not respond, summary judgment, if appropriate, shall be
> entered against him.

The court must afford all reasonable inferences and construe the evidence in the light most

favorable to the nonmoving party.  *Cox v. Kentucky Dep't. of Transp.*, 53 F.3d 146, 150 (6th Cir.

1995) (citation omitted); *see also United States v. Hodges X-Ray, Inc.,* 759 F.2d 557, 562 (6th

Cir. 1985).  However, the nonmoving party may not simply rely on its pleading, but must

"produce evidence that results in a conflict of material fact to be solved by a jury."  *Cox*, 53 F.3d

at 150.

Summary judgment should be granted if a party who bears the burden of proof at trial

does not establish an essential element of his case. *Tolton v. American Biodyne, Inc.*, 48 F.3d

937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322).  Accordingly, "the mere existence of a

scintilla of evidence in support of plaintiff's position will be insufficient; there must be evidence

on which the jury could reasonably find for the plaintiff."  *Copeland v. Machulis*, 57 F.3d 476,

479 (6th Cir. 1995) (quoting *Anderson*, 477 U.S. at 52 (1986)).  Moreover, if the evidence is

"merely colorable" and not "significantly probative," the court may decide the legal issue and

grant summary judgment.  *Anderson*, 477 U.S. at 249-50 (citation omitted).

### Discussion

### (1) hostile work environment

Under Title VII, an employee alleging a hostile work environment based on sexual

harassment must show the following: (1) the employee was a member of a protected class, (2)

the employee was subjected to unwelcome sexual harassment, (3) the harassment complained of

was based on sex, (4) the charged sexual harassment created a hostile working environment and

(5) the existence of employer liability. *Hafford v. Seidner*, 183 F.3d 506, 512 (6th Cir.1999); *see*

*also Williams v. General Motors Corp.*, 187 F.3d 553, 560-61. (6th Cir.1999).

A hostile work environment occurs "[w]hen the workplace is permeated with

discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the

conditions of the victim's employment and create an abusive working environment." *Harris v.*

*Forklift Sys.*, Inc., 510 U.S. 17 (1993) (internal quotation and citation omitted). Both an objective

and subjective test must be met; in other words, the conduct must be so severe or pervasive as to

constitute a hostile or abusive working environment both to the reasonable person and the actual

victim. *Id.* at 21-22.

The fifth element of the five-part showing, employer liability, differs depending upon the

identity of the alleged harasser, with a distinction drawn between co-worker harassment and

harassment perpetrated by a supervisor. *Nievaard v. City of Ann Arbor,* 124 Fed. Appx. 948 (6th

Cir. 2005)   In this case, plaintiff alleges supervisory harassment and the Sixth Circuit has stated

in this regard,

> An employer's liability for supervisory sexual harassment depends on the consequences
> of the supervisor's actions. If proven sexual harassment by the supervisor did not result in
> a tangible employment action, then the employer may not be liable if it engaged in
> preventative or corrective measures and the plaintiff unreasonably failed to utilize the
> measures the employer provided.

*Keeton v. Flying J, Inc*., 429 F.3d 259 (6th Cir. 2005) (citing *Faragher v. City of Boca Raton*, 524

U.S. 775 (1998) and *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998) ).  *See also Crawford*

*v. Metropolitan Government of Nashville,* 2006 WL 3307507 (6th Cir. Nov. 14, 2006) (stating

that *Faragher* created an affirmative defense against an employer's vicarious liability for sexual

harassment by its employees when: (1) the employer exercised reasonable care to prevent and

correct promptly any sexually harassing behavior, and (2) the plaintiff employee unreasonably

failed to take advantage of any preventive or corrective opportunities provided by the employer

or to avoid harm otherwise.)

If the sexual harassment did result in a tangible employment action, the employer will be

strictly liable for the supervisor's sexual harassment. *Keeton*, 429 F.3d at 262 (citing *Ellerth*, 524

U.S. at 762-63) "When a plaintiff proves that a tangible employment action resulted from a

refusal to submit to a supervisor's sexual demands, he or she establishes that the employment

decision itself constitutes a change in the terms and conditions of employment that is actionable

under Title VII." *Id.*  A tangible employment action is "a significant change in employment

status, such as hiring, firing, failing to promote, reassignment with significantly different

responsibilities, or a decision causing a significant change in benefits." *Id.*

In this case, plaintiff alleges that she was constructively discharged.  It is now recognized that "constructive discharge, while a potential liability-incurring employment action for the employer, is not a 'tangible employment action' in sexual harassment cases.  Therefore, the affirmative defenses available to employers in non-tangible action cases are available in constructive discharge cases." *Plautz v. Potter,* 156 Fed. Appx. 812, 819 (6ᵗʰ Cir. 2005) (citing *Pennsylvania State Police v. Suders,* 542 U.S. 129 (2004) ).  *See also Finnerty v. Sadlier,* 176 Fed. Appx. 158 (2d Cir. 2006) (""[A] constructive discharge resulting from a hostile work environment does not constitute a tangible employment action because generally a constructive discharge, like harassment itself, is not 'ratified or approved by the employer.'")

Defendants assert the affirmative defense.  Accordingly, the inquiry here is whether DTR exercised reasonable care to prevent and correct promptly any sexually harassing behavior of Dille and whether plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities provided by DTR or to avoid harm otherwise.  *See also Collette v. Stein-Mart, Inc.,* 126 Fed. Appx. 678 (6ᵗʰ Cir. 2005) (Even assuming a plaintiff establishes a prima facie case of hostile work environment sex discrimination and constructive discharge, the issue is whether defendant has a meritorious *Ellerth-Faragher* defense.)

The Sixth Circuit has found that the first prong of the *Ellerth-Faragher* defense may be satisfied by the defendant showing the existence of an anti-harassment policy which has been disseminated or publicized, and that it enforced its policy, ie., it took prompt and adequate corrective measures after learning of the plaintiff's complaint.  *Collette,* 126 Fed. Appx. at 685-686.

9

Defendants assert that the first prong has been satisfied.  Plaintiff disagrees, arguing that DTR inadequately responded to plaintiff's complaint.

It is undisputed that DTR had a sexual harassment policy that it disseminated to its employees.  (pltf. depo. 226-227; Bennet depo. 16-18) Plaintiff admits that she had a copy of the policy, that she read it and that it forbade the conduct that she alleges Dille perpetrated against her.  (pltf. depo. 227)

The Court then turns to whether DTR enforced the policy.  Plaintiff testified that she complained once to Linda Bennet about Dille's behavior, about three weeks after his verbal comments began, and Bennet told Dille to stop it.  (pltf. depo. 71-72) As such, defendants assert that DTR promptly and effectively addressed this one complaint.  Linda Bennet testified, however, that she did not receive any complaints from plaintiff, or anyone else, that plaintiff was being treated inappropriately or being subjected to sexual comments or anything of that nature. (Bennet depo. 23) More importantly, plaintiff testified that Bennet did not take the complaint seriously and laughed when she talked to Dille:

> Q.  Did you ever tell anybody at the store who was making these kinds of comments that you didn't like it?
>
> A.  Yes.
>
> Q.  Who did you tell?
>
> A.  Linda, the district manager.
>
> Q.  And when did you do that?
>
> A.  I told her, and she - - I told her like - - I told her like three weeks after he was doing it.  And she was there and she just told - - blew me off and said, 'Sean, you better quit doing that because Nicki's gonna tell her father' or something like that.
>
> Q.  She told Sean to stop doing it?

A.  Uh-huh.

Q.  Yes?

A.  She said,  'Sean, you better stop doing it because Nicki's gonna tell her father.'  But he never stopped.  She said it like jokingly, you know.

***

Q.  You told Linda Bennet about this in the Burger King?

A.  Yeah.

Q.  Actually when she was in the store?

A.  Yes.

Q.  What exactly did you say to her?

A.  I told her - - I said - - what did I tell her?  I said - - I told her, I said, 'Linda, Sean keeps making all these sexual comments about me and stuff like that and I want it to stop, because I'm getting sick and tired of it.'  I said, 'If it doesn't stop pretty soon, I'm going to quit, and I'm serious about quitting, too.'  So I said, 'I'm giving you guys forewarning. I'm going to quit if he keeps doing this.' And they didn't take me seriously.  And Linda just looked at Sean and said, 'She's going to quit if you keep doing it, so you better quit - - or you better stop because she's going to tell her dad.'

Q.  And you think she was joking when she said that?

A.  Oh, she was.

Q.  What causes you to say that?

A.  Because she was laughing when she said it.

Q.  Okay.  Did she tell Sean to stop it right there, in front of you?

A.  Yes.

Q.  Did Sean make any response?

A.  He just hugged me and said, 'Oh, Nikki, you know I love you.'

Q.  Did he say anything else?

11

A.  No.  He just walked away after that.

(pltf. depo. 71-73)

Defendants cite EEOC guidelines that "remedial measures need not be those that the employee requests or prefers, as long as they are effective."  (Doc. 30 at 3)  Plaintiff's testimony, however, shows no effective remedial measure but only that Bennett considered the complaint a joke, and Dille took it as such. Construing the evidence most favorably for plaintiff, defendants have not demonstrated that they enforced their anti-harassment policy and, accordingly, defendants have not shown that the first prong of the affirmative defense has been satisfied.  For this reason, defendants are not entitled to summary judgment on the basis of the affirmative defense and the Court need not proceed to the second prong.  *See Walker v. United Parcel Service of America,* (76 Fed. Appx. 881 (10th Cir. 2003) (To succeed on the affirmative defense, defendant "must demonstrate that there are no material issues of fact and that it is entitled to judgment as a matter of law on both prongs of the defense." (citing *Ellerth,* 524 U.S. at 765 (affirmative defense "comprises two necessary elements.") and *Olson v. Lowe's Home Centers, Inc.,* 130 Fed. Appx. 380 (11th Cir. 2005) (citation omitted) ("Both elements of the [*Ellerth-Faragher* defense] must be satisfied for the defendant-employer to avoid liability, and the defendant bears the burden of proof on both elements.")

Defendants argue that notwithstanding the application of the affirmative defense, they are entitled to judgment because plaintiff cannot demonstrate necessary elements of her claim, namely that she was subjected to a hostile working environment.  For the following reasons, this Court disagrees.

Construing the evidence in a light most favorable to plaintiff, the Court finds that

plaintiff's testimony shows an abusive working environment perpetrated by her supervisor. Nevertheless, defendants point out that plaintiff admitted that she loved Dille, wanted a romantic connection with him and considered him her best friend.  And, while plaintiff testified that when Dille inappropriately touched other female employees she found it offensive and made her feel unsafe, she also testified that she was sometimes jealous of his contact with other women. Plaintiff, however, additionally testified that while she did not always mind if Dille touched her and was not always made to feel uncomfortable when he touched her, at other times she was offended by his conduct and tried to get away from him.  Finally, plaintiff testified that she did not want to have sex with Dille in his car, she told him "no" and tried to get him off of her.

On this basis, there is an issue of fact as to whether plaintiff was subjected to a hostile work environment and summary judgment on these claims is not warranted (Counts One through Three).  On the same basis, defendants are not entitled to summary judgment on plaintiff's separate claims for constructive discharge (Count Four), negligent hiring (Count Seven), respondeat superior (Count Eight) and emotional distress (Counts Nine and Ten).

### (2) sex discrimination

Plaintiff alleges that she was additionally discriminated on the basis of sex when defendants wrongfully disciplined and failed to promote her (Count Five).  Plaintiff, however, admitted at deposition that she was never disciplined by defendants and never applied for a promotion.  (pltf. depo. 259, 306-307) As such, summary judgment is appropriate on this claim.

### Conclusion

For the foregoing reasons, defendants' Motion for Summary Judgment is denied as to all claims except for Count Five.

IT IS SO ORDERED.


 /s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge


Dated: 5/24/07